**In re Kenneth R. NEAL, SS#: 508–92–6023, Melissa P. Neal, SS#: 414–37–4547, Debtors.**

**Bankruptcy No. 89–00846–S07.**

United States Bankruptcy Court, E.D. North Carolina.

Oct. 20, 1989.

Algernon L. Butler, Jr., Wilmington, N.C., for debtors.

Nancy M. Guyton, Wilmington, N.C., for Roland Athan.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the "Motion for Order of Contempt" filed by the male debtor, Kenneth R. Neal, d/b/a Calabash Animal Hospital, seeking damages from Roland Athan for violations of the automatic stay provided by 11 U.S.C. § 362. A hearing was held in Raleigh, North Carolina on October 5, 1989.

The debtors, Dr. Neal and his wife, Melissa Neal, filed a joint petition for relief under chapter 13 of the Bankruptcy Code on April 3, 1989, and the debtors' chapter

13 plan was confirmed by the court on August 22, 1989.[1]

One of the unsecured creditors listed in the debtors' schedules is Towel & Linen Outlet. The schedules reflect that this creditor has an unsecured claim of $850, and an unsecured proof of claim was filed by Towel & Linen Outlet in that amount on May 8, 1989. The Towel & Linen Outlet is a small business owned and operated by Bonnie Athan in the small town of Calabash, North Carolina. Mrs. Athan's husband, Roland Athan, owns several businesses which adjoin the Towel & Linen Outlet and is the party from whom Dr. Neal seeks damages for violations of the automatic stay.

In addition to selling towels and linens, Mrs. Athan also sells antique furniture, and in October, 1988, Dr. Neal, a practicing veterinarian in Calabash, went to the Towel & Linen Outlet to purchase furniture for his animal clinic. Mr. Athan was helping Mrs. Athan at the time and participated in the sale negotiations. An agreement was reached, and Dr. Neal was to buy the furniture for a purchase price of $1,625. Only $775 of the purchase price was paid, and Dr. Neal left with half of the furniture. Later, while Mr. Athan was alone in the store, Dr. Neal returned for the rest of his purchase. According to Mr. Athan, Dr. Neal did not have his checkbook, but promised to return later in the week to pay the balance due of $850. Mr. Athan, believing that Dr. Neal would return to pay the $850 still owing, let Dr. Neal have the furniture—in fact, Mr. Athan helped load the furniture onto the debtor's truck. Mrs. Athan was upset when she learned that her husband had allowed Dr. Neal to take the furniture without the balance being paid. As it turned out, her fears were justified—Dr. Neal did not return and $850 is still outstanding. Mr. Athan felt responsible for the loss incurred by his wife and under-standably annoyed by Dr. Neal's failure to honor his commitment.

Dr. Neal maintains that after the bankruptcy was filed in April, 1989, Mr. Athan, with full knowledge of the bankruptcy, continued to press Dr. Neal for payment. According to Dr. Neal, Mr. Athan called him approximately five times after the bankruptcy petition was filed demanding payment of the $850. Dr. Neal testified that he told Mr. Athan about the bankruptcy, yet Mr. Athan persisted in his efforts to collect the debt.

Mr. Athan denies those conversations took place. According to his testimony, he knew about the bankruptcy but did not know about the automatic stay. The reason he made no efforts to collect the debt, according to Mr. Athan, was his feeling that his efforts would be fruitless, not that such efforts were prohibited by the stay. The court does not find Mr. Athan's testimony in that regard to be credible and finds that on approximately five occasions Mr. Athan, with full knowledge that Dr. Neal had filed a bankruptcy petition, and after having been told by Dr. Neal that collection efforts were improper, made telephone calls to Dr. Neal to pressure him to pay the $850 debt to Towel & Linen Outlet.

In addition to these telephone calls, there were two other incidents in which Mr. Athan violated the automatic stay.

The first event took place on the evening of August 4, 1989. Dr. Neal and his girlfriend, Tina Wilson, gave a joint party to celebrate Ms. Wilson's birthday, and the third anniversary of the animal clinic. Dr. Neal and Ms. Wilson hired a band and provided food and beer.[2] The band, which was set up on the lawn in front of the clinic, was quite loud and most likely could be heard throughout most of the small town. It could certainly be heard by Mr. Athan whose business was located about 200 feet away.

---

1. The debtors' plan provides for payments of $3,300 per month for sixty months. A number of secured creditors will have their claims paid directly by the debtors—a procedure which is sometimes known as payment "outside the plan."

2. Mr. Athan testified that Dr. Neal violated Local Rule 4002.1(4) EDNC by making purchases in excess of $500 in connection with the party. Actually, the rule was not violated because Dr. Neal and Ms. Wilson split the cost of the party and Dr. Neal's share was less than $300.

Mr. Athan and his friend, Richard Lyons, also a creditor of Dr. Neal, had been drinking and were angered by the fact that Dr. Neal could spend money on a party yet would not pay his obligations to them. Fueled by their frustration and, most likely by the alcohol, they set out in Mr. Athan's truck to, in Mr. Lyons' words, "ruin" the party. With Mr. Athan behind the wheel, the truck pulled into the midst of the festivities and stopped on the lawn between the band and the partygoers. The band leader asked Mr. Athan to leave, but he refused. There followed a nose-to-nose confrontation between Dr. Neal and Mr. Athan. Mr. Athan admits calling Dr. Neal a cheat and a crook, but denies ever asking him to pay the debt. That testimony is contradicted by Dr. Neal and others who testified that Mr. Athan, in addition to shouting derogatory remarks concerning Dr. Neal's character, did demand payment. Whether or not Mr. Athan specifically asked Dr. Neal to pay the debt is not important. There can be no doubt about Mr. Athan's intentions—his purpose was to humiliate Dr. Neal in front of his friends and clients because Dr. Neal had not paid the debt. Mr. Athan's harassment and intimidation of the debtor was an act either to coerce payment or to obtain property, namely the furniture, which, at the time was property of the debtor's bankruptcy estate.[3]

Eventually, Mr. Athan and Mr. Lyons left the party and went to the Elks Club next door to the clinic. Mr. Athan and Mr. Lyons continued to drink, and Mr. Athan subsequently returned to the party. Dr. Neal walked over to the truck to ask Mr. Athan to leave. Mr. Athan did leave, but not before striking Dr. Neal in the face—criminal assault charges have been filed.

The final, and perhaps the most serious, incident which constitutes a violation of the stay occurred a few weeks later, over the Labor Day weekend on September 4th. Dr. Neal testified that he received a threatening telephone call from Mr. Athan in which Mr. Athan asked for payment of the debt and warned that "things could happen" and that things have been known to "burn down." The clear implication was that if Dr. Neal did not pay his debt, his clinic might be destroyed. Mr. Athan denied having made the call and again the credibility of Dr. Neal and Mr. Athan is at issue. The court believes Dr. Neal's testimony to be credible and finds that Mr. Athan made the threatening telephone call for the purpose of collecting the debt in violation of the automatic stay.

■ One of Mr. Athan's primary defenses is that he was not a creditor of the debtor. It is true that the $850 obligation is owed to Mrs. Athan's business, the Towel & Linen Outlet, but Mr. Athan's defense has no merit. Section 362(a) provides a stay that is applicable to *all entities*, not just creditors. The stay applies to Mr. Athan, and he has violated several of the stay's prohibitions.

Specifically, Mr. Athan has violated § 362(a)(3) and (6). Mr. Athan's telephone calls and his conduct at the party were acts designed to either collect a claim against the debtor in violation of § 362(a)(6) or to obtain possession of property (the furniture) of the estate in violation of § 362(a)(3). At the time of the Labor Day threats, the furniture was no longer property of the estate, but Mr. Athan's conduct still constituted an act to collect a claim from the debtor in violation of § 362(a)(6).

Section 362(h) states that an individual injured by the willful violation of a stay *shall* recover "actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.[4]

---

3. The incident took place on August 4, 1989, prior to confirmation of the plan at a time when all of the debtors' assets were property of the estate. 11 U.S.C. § 1306(a). The furniture became property of debtors after confirmation. 11 U.S.C. § 1327(b).

4. The leading case concerning sanctions under § 362(h) is *Budget Service Company v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir. 1986). In that case the circuit court upheld the bankruptcy court's award of attorney's fees ($1,162.50), compensatory damages ($350) and punitive damages ($10,000).

■ In this case the attorney's fees incurred by the debtor are $1,100. These fees are reasonable in the circumstances. It is more difficult to ascertain the amount of actual damages which Dr. Neal sustained.

■ The debtor testified that business at the clinic declined following the incident at the party, but that decline may be seasonal or may be the result of other factors unrelated to Mr. Athan's activities. Clearly, Dr. Neal had to close his clinic to travel to Raleigh to prosecute his motion. The loss of income for that day was directly caused by the violation of the stay and should be reimbursed by Mr. Athan. The court finds that lost income to be $750. The court also finds that reasonable expenses for the debtor's trip to Raleigh are $100. Accordingly, the court will order the payment of compensatory damages of $850.[5]

At the conclusion of the hearing, the court stated from the bench that it would not award punitive damages. After further consideration of the evidence, the court is of the opinion that punitive damages are indeed appropriate.

■ The automatic stay is a vital part of the overall protection which the bankruptcy law provides to debtors. If the automatic stay is not respected, the benefits which bankruptcy affords to debtors will be lost. It is obvious to the court that Mr. Athan had little respect for the stay and, after considering his testimony and demeanor at the hearing, the court is not convinced that his attitude has changed. In view of the seriousness of the violations, Mr. Athan's continued indifference to the stay, and the need to deter future stay violations, the court believes that punitive damages of $1,000 are appropriate and necessary in this case. Accordingly,

5. At the conclusion of the hearing the court announced that it would include lost income which resulted from Dr. Neal's closing of the clinic to meet with his attorney and for his attending the trial in state court in connection with the criminal charges against Mr. Athan. Upon further reflection, the court does not believe that these items should be included. The court will also not include the salary of Dr. Neal's secretary which he would have been obli-

IT IS HEREBY ORDERED that Roland Athan pay to Algernon L. Butler, Jr., counsel for the debtor, the sum of $1,100 for attorney's fees for prosecuting this motion; and

IT IS FURTHER ORDERED that Roland Athan pay to the debtor, Kenneth R. Neal, the sum of $850 as compensatory damages; and

IT IS FURTHER ORDERED that Roland Athan pay to the chapter 13 trustee, Richard M. Stearns, P.O. Box 2218, Kinston, N.C. 28501, the sum of $1,000 as punitive damages, to be distributed to creditors under the debtor's chapter 13 plan.[6]

gated to pay had the clinic been open. The court will also not require Mr. Athan to pay for the costs of the party which he and Mr. Lyons tried to "ruin."

6. This payment shall be *in addition* to the payments which the debtors are obligated to make under the plan.